1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, a foreign corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>BARNICK CHIROPRACTIC, PS, a Washington professional services company; JOSE DANIEL ORANTES, an individual; ROGER BARNICK, an individual; OKSANA KUTSAR, an individual,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff COUNTRY Mutual Insurance Company brings this action for declaratory relief and alleges as follows.

## I.    PARTIES

1.1    Plaintiff COUNTRY Mutual Insurance Company ("CMIC") is an Illinois insurance company with its principal place of business in Illinois that at all material times was authorized to do business in the State of Washington. CMIC issued insurance policy number A46K5096291 to named insureds Melissa C. Barnick and Roger A. Barnick for the period May 10, 2024, to May 10, 2025 ("Home Policy"). The Policy provides a liability limit per occurrence of $1,000,000, subject to all terms, exclusions, conditions, limits, endorsements, and other language of the Home Policy.

COMPLAINT FOR DECLARATORY
JUDGMENT - 1

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

1.2     CMIC issued insurance policy number AM 9178579 10 to named insured Roger A. Barnick for the period April 18, 2024, to April 18, 2025 ("Businessowners Policy"). (Together, the Home Policy and the Businessowners Policy are the "Policies.") The Businessowners Policy provides a liability limit per occurrence of $2,000,000, subject to all terms, exclusions, conditions, limits, endorsements, and other language of the Businessowners Policy.

1.3     Defendant Barnick Chiropractic, PS is a Washington professional services corporation that is located in and does business in Clark County, Washington.

1.4     Defendant Jose Daniel Orantes is a citizen of the State of Washington who resides in Clark County, Washington.

1.5     Defendant Roger Barnick is a citizen of the State of Washington who resides in Clark County, Washington.

1.6     Defendant Oksana Kutsar is a citizen of the State of Washington who resides in Clark County, Washington.

## II.     JURISDICTION AND VENUE

2.1     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 on the basis of diversity of citizenship and on the basis that the amount in controversy exceeds the jurisdictional amount of $75,000, exclusive of interest and costs.

2.2     This Court has personal jurisdiction over Defendant Barnick Chiropractic, PS because it is a Washington corporation doing business in Washington. The Cout has personal jurisdiction over Defendants Jose Daniel Orantes, Roger Barnick, and Oksana Kutsar because they reside in the State of Washington. Each Defendant had and has minimum contacts with the State of Washington.

2.3     Venue is proper in the Western District of Washington at Tacoma under 28 U.S.C. § 1391 because Defendants Jose Daniel Orantes, Roger Barnick, and Oksana Kutsar reside in Clark County, Washington, and because this case involves alleged injuries that occurred in Clark County, Washington.

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

### III.    UNDERLYING LAWSUIT

3.1     Attached as **Exhibit 1** is a copy of the Complaint for Damages filed in the lawsuit *Oksana Kutsar v. Barnick Chiropractic, PS, et al.*, Clark County Superior Court Case No. 25-2-03127-06 ("Underlying Lawsuit").

3.2     The Complaint in the Underlying Lawsuit includes the following factual allegations:

3.1     Defendant Practice is a chiropractic and massage practice located in Clark County with locations in Ridgefield and Vancouver, Clark County, Washington.

3.2     Plaintiff worked for the Practice from approximately February 11, 2025 to May 16, 2025.

3.3     Ms. Kutsar has had to overcome many challenges in her life. Before working for Defendants, she endured serious trauma and had been the victim of sexual abuse. As a result, Ms. Kutsar is very sensitive to discussions or acts of intimidation, violence, and advances of a sexual nature.

3.4     During her employment, Plaintiff experienced ongoing severe and pervasive sexual harassment and sex/gender discrimination in the workplace perpetrated primarily by the Office Manager or "Operations Manager', and her direct supervisor at the Practice, Jose Daniel "JD" Orantes.

3.5.    Mr. Orantes, as the Office Manager engaged in numerous actions and comments in the workplace at the Practice that were unwanted, hostile, based on gender or sex, and sexual in nature directed at protected employees including Plaintiff.

3.6     Dr. Barnick and the Practice failed to take prompt and reasonable steps to end the hostile work environment perpetrated by Mr. Orantes within the workplace at the Practice.

**A.     General discrimination and hostile work environment based on sex**

3.7     Defendant Orantes told Ms. Kutsar "I love you" when he first met her.

3.8     Mr. Orantes regularly used other pet names in the office referring to female

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

employees, including Plaintiff as "his favorite".

3.9     Defendant frequently left Ms. Kutsar alone in the office with no support, especially early on when she was new to the office.

3.10    Mr. Orantes would frequently use "heart hands" toward female employees including Plaintiff. This included Mr. Orantes sending texts of an avatar of himself or emojis making "heart hands" to female employees including Plaintiff.

[Image of "heart hands" avatar sent by Mr. Orantes.]

3.11    Mr. Orantes also regularly commented on female employees' appearance, including Plaintiff. Mr. Orantes specifically made comments about what Ms. Kutsar was wearing on multiple occasions stating, "That is a great color on you!" or "I love that color on you!" Mr. Orantes also accused Plaintiff and other female employees of having "RBF" or "resting bitch face".

3.12    On at least one occasion, on or about March 12, 2025, Mr. Orantes sent Ms. Kutsar "drink money" and exchanged text messages about it to Ms. Kutsar.

- I am sending you a drink money
- Since you aren't here
- You can also text me if you need anything
- I gotchu
- Awesome thank you didn't have to send me money

Pictured: True and correct copy of messages about Orantes sending Plaintiff "drink money".

3.13    On multiple occasions, Mr. Orantes would lurk around Ms. Kutsar or isolate her by being around her and closing the door behind them, which came across to Ms. Kutsar as very threatening and intimidating.

3.14    Mr. Orantes also treated the men more favorably in the workplace than women,

COMPLAINT FOR DECLARATORY
JUDGMENT - 4

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

including Plaintiff. Mr. Orantes treated men with more respect and dignity, whereas he was more contemptuous and dismissive of women and their opinions.

3.15    On multiple occasions, Mr. Orantes discussed with Ms. Kutsar about how he used to be in a gang, that he had committed violent acts like strangling someone and breaking his thumb. Mr. Orantes told Ms. Kutsar that he was "not a good person" and that he was now in therapy for being a "rude person". These statements were very intimidating and frightening for Ms. Kutsar.

3.16    In another instance, Ms. Kutsar was present for a meeting with Dr. Barnick, Mr. Orantes and another female coworker. During the meeting, Mr. Orantes was very dismissive and  demeaning and yelled at the female coworker and told her that she "walks around with a face like someone pissed in her corn flakes".

3.17    Additionally, Mr. Orantes would regularly share unwanted and intimate details about his romantic and personal life with coworkers.

**B.    Sexual assault with Hypervolt percussion massager device.**

3.17 [*sic*] On or about Thursday, March 6, 2025, Ms. Kutsar received chiropractic treatment during her shift.

3.18    Mr. Orantes routinely volunteered to give patients and female employees massage treatment with the Hypervolt percussion device and has volunteered to multiple women to give them treatment. The Practice and Dr. Roger Barnick were aware that Mr. Orantes regularly used the Hypervolt device to massage Plaintiff, without formal massage training or a massage license.

[Image of Hypervolt percussion massager]

3.19    Mr. Orantes, who is not formally trained as a massage therapist or chiropractor, approached Ms. Kutsar and relentlessly asked her multiple times if he could use the Hypervolt massage device on her, which she refused. Mr. Orantes repeatedly told Ms.

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Orantes that he was "the best" with the Hypervolt device, that "no one does it" like Mr. Orantes, and that Ms. Kutsar :should really feel how" Mr. Orantes uses the Hypervolt.

3.20     Reluctantly, Ms. Kutsar relented and agreed to allow Mr. Orantes to use the Hypervolt device on her, but asked Mr. Orantes to limit the treatment to her back. Importantly, Ms. Kutsar did not request treatment with the Hypervolt device on her legs, sciatic area, buttocks, or anywhere else. Mr. Orantes did not mention that the massage was for "training."

3.21     Mr. Orantes led Ms. Kutsar to an area in the office and so the two of them were alone. No licensed chiropractor supervised Mr. Orantes as he administered the so-called "treatment".

3.22     Although Ms. Kutsar gave Mr. Orantes the directive to limit the massage to her back, Mr. Orantes began to use the massage device on her sciatic area, buttocks, and legs.

3.23     While Mr. Orantes was using the Hypervolt device on Ms. Kutsar's legs, he moved the device inside her right thigh and moved it up into her vaginal area, around and on top of her vagina.

3.24     Suddenly, Mr. Orantes received a phone call about his vehicle being towed, so he stopped the "treatment" of Ms. Kutsar. In shock, Ms. Kutsar came off the treatment table and glared at Mr. Orantes.

3.25     In the workdays following, Mr. Orantes kept doing the "heart hands" symbol towards Ms. Kutsar and tried to get her to reciprocate.

3.26     On or around March 10, 2025, Ms. Kutsar met with Dr. Barnick and told him about Mr. Orantes' assault of her with the Hypervolt device.

3.27     On or around March 11, 2025, Mr. Orantes again offered to use the Hypervolt on Ms. Kutsar, and she assertively declined, stating "NO!" In a panic, Ms. Kutsar immediately left the office and went out for some fresh air.

COMPLAINT FOR DECLARATORY
JUDGMENT - 6

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

3.28    On or around March 12, 2024, Ms. Kutsar was in the break room, where the door was almost always open. Mr. Orantes walked into the breakroom and immediately closed the door behind him, isolating Ms. Kutsar, which made her feel threatened and intimidated.

3.29    In March 2025, Ms. Kutsar informed Defendants that she was scheduled for a surgery and took the time off for the surgery and recovery. On or about March 14, 2025, Mr. Orantes told Ms. Kutsar that he would come over and "take care of" Ms. Kutsar after her surgery, which Ms. Kutsar declined as it was unwanted and unprofessional. Mr. Orantes further offered to "Door Dash" food to Ms. Kutsar, which she declined as well.

3.30    On or around March 21, 2025, Ms. Kutsar contacted the Ridgefield Police Department and reported Mr. Orantes for the sexual assault.

**C.    Employer's response to Plaintiff's allegation of sexual assault**

3.31    In response to Ms. Kutsar's complaint of sexual assault, Dr. Barnick allegedly "interviewed" two witnesses: Leanna Vasilyuk and Andrea Azar and spoke with Dr. Maurice Tucker, another chiropractor.

3.32    Dr. Barnick concluded that "there is no evidence that this accusation justifies termination."

3.33    However, Dr. Barnick concluded that the "occurrence does show a lack of professional judgement on the part of JD Orantes. Unscheduled, unsupervised physical contact by a manager with a newly hired employee is contrary to best practices." Moreover, Dr. Barnick promised "zero tolerance" for Mr. Orantes.

3.34    Dr. Barnick apparently concluded that Mr. Orantes would "minimize contact with Oksana Kutsar" including "physical proximity" and "minimize communication".

3.35    Dr. Barnick additionally concluded that Mr. Orantes would not be allowed to "utilize Hypervolt therapy on any patients or female co-workers." (Emphasis added).

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

**D.    Defendants' lack of meaningful response**

3.36    After Dr. Barnick promised Ms. Kutsar that Mr. Orantes would no longer use the Hypervolt device on any patients, Dr. Barnick failed to supervise Mr. Orantes in a way that would cease or limit his offending behavior of using the Hypervolt device and performing treatment on patients.

3.37    After Dr. Barnick directed Mr. Orantes to not use the Hypervolt device on patients, he nevertheless continued to do so on multiple occasions.

3.38    Additionally, despite Dr. Barnick's directive for Mr. Orantes to limit contact with Ms. Kutsar, on at least one occasion, without any prior notice to Ms. Kutsar, Mr. Orantes showed up for treatment at the office, which was unannounced and unscheduled; This unannounced and unscheduled encounter was startling and scary for Ms. Kutsar.

**E.    Discussions with Dr. Barnick**

3.39    On or around May 9, 2025, Dr. Barnick attempted to speak with Ms. Kutsar, which she felt was an attempt by him to silence her.

3.40    On or around May 9, 2025, Ms. Kutsar sent an email to Dr. Barnick. Attached to the email were two photos taken of Mr. Orantes utilizing the Hypervolt on patients on April 15 and 29th, 2025. Among other things, Ms. Kutsar made it clear that Mr. Orantes continued to use the Hypervolt despite Dr. Barnick's directive. Ms. Kutsar further outlined her concerns about retaliation.

3.41    On or around May 9, 2025, Dr. Barnick responded to Ms. Kutsar's email claiming that he could not tell who the patients were in the photos and diminishing her concerns. Further, Dr. Barnick dismissed Ms. Kutsar's concerns of retaliation. In addition, Dr. Barnick reiterated that he wanted to silence Ms. Kutsar and that he did not want the sexual assault to be "a topic of workplace conversation" and called Ms. Kutsar "unprofessional" for continuing to discuss it. Moreover, instead of focusing on Mr. Orantes' violation of his directive to cease using the Hypervolt on patients, Dr. Barnick made vailed threats to Ms.

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

Kutsar by saying that taking photos of coworkers was allegedly "grounds for a harassment charge" and taking or sharing photos of a patient was allegedly "a clear violation of HIPAA." Dr. Barnick then sent a company-wide email around to chill and prevent further photos from being taken in the workplace which could document Mr. Orantes' behavior.

3.42    On or around May 12, 2025, Ms. Kutsar sent another email to Dr. Barnick reiterating her concerns.

**F.    Resignation**

3.43.    On or around Friday May 16, 2025, Ms. Kutsar resigned from her position working for Defendants, citing Dr. Barnick's lack of response to address the harassment and assault.

3.44    After Ms. Kutsar resigned, Dr. Barnick sent company-wide emails to staff attempting to explain his actions and claiming that "there were no findings that suggested an unsafe or unprofessional workplace."

3.45    After resignation, the Practice shorted Ms. Kutsar wages for her final day of work.

## IV.    CMIC POLICIES

4.1    CMIC is currently providing a defense to Roger C. Barnick PS, Roger Barnick, and Jose Daniel Orantes in the Underlying Lawsuit, subject to a full reservation of rights under the Policies, including the right to deny coverage.

4.2    The Home Policy sets forth the following definitions:

**Definitions (Includes Limitations)**

**A.**  In this policy, "you" and "your" refer to the person shown in the Declarations as INSURED and that person's spouse if a resident of the same household. "We", "us" and "our" refer to the company providing this insurance.

**B.**  In addition, these words and phrases in quotation marks are defined as follows:

\* \* \*

   **3.**  "Bodily injury" means physical injury to a person. Sickness, disease, or emotional distress that is not caused by physical injury is not "bodily injury".

   **4.**  "Business" means:

COMPLAINT FOR DECLARATORY
JUDGMENT - 9

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

     **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

     **b.** Any other activity engaged in for financial compensation, other compensation, or other professional purposes, except the following:

        **(1)** Activities for which no "insured" receives more than $2,000 in total compensation for the 12 months before the "occurrence";

        **(2)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

        **(3)** The rendering of home day care services to a relative of an "insured".

     \* \* \*

     **7.** "Insured" means:

     **a.** "You" and residents of "your" household who are:

        **(1)** "Your" relatives; or

        **(2)** Other persons under the age of 21 and in the care of any person named above;

     **b.** A student enrolled in school full time, as defined by the school, who was a resident of "your" household before moving out to attend school, provided the student is under the age of:

        **(1)** 24 and "your" relative; or

        **(2)** 21 and in "your" care or the care of a person described in a.(1) above; . . . .

     Throughout this policy, when the word "an" or "any" immediately precedes the word "insured", the words "an insured" or "any insured" mean one or more "insureds".

     \* \* \*

     **8.** "Insured location" means:

     **a.** The "residence premises";

     **b.** Under SECTION 1 only, the part of other premises, other structures and grounds used as a residence; and

        **(1)** Which is shown in the Declarations; or

        **(2)** Which is acquired by "you" during the policy period for use as "your" principal residence;

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

**c.** Any premises used by "you" in connection with a premises described in a. and, under SECTION 1 only, b. above;

**d.** Any part of premises not owned by an "insured" where an "insured" is temporarily residing;

**e.** Vacant land owned by or rented to an "insured";

**f.** Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

**g.** Individual or family cemetery plots or burial vaults of an "insured";

**h.** Any part of a premises occasionally rented to an "insured" for other than "business" use; or

**i.** Any location shown in the Declarations.

* * *

**10.** "Occurrence" means:

**a.** Under **SECTION 1**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

**(1)** "Bodily injury"; or

**(2)** "Property damage".

* * *

**12.** "Property damage" means physical injury to or destruction of tangible property, including the resulting loss of use of this property.

* * *

**16.** "Residence premises" means:

**a.** The one or two family dwelling where "you" principally reside; or

**b.** That part of any other building where "you" principally reside;

and which is at a location listed in the Declarations. "Residence premises" also includes grounds and appurtenant structures at that location.

4.3    The Liability section of the Home Policy provides in relevant part as follows:

**SECTION 1**

**Liability, Coverage A**

COMPLAINT FOR DECLARATORY
JUDGMENT - 11

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, "we" will:

1. Pay up to "our" limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at "our" expense by counsel of "our" choice, even if the suit is groundless, false or fraudulent. "We" may investigate or settle any claim or suit as "we" decide is appropriate. "Our" duty to settle or defend ends when "our" limit of liability for the "occurrence" has been exhausted by payment of judgments or settlements.

* * *

**Exclusions – SECTION 1**

* * *

E. **Liability, Coverage A** and **Medical Payments, Coverage B** do not apply to the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" that may reasonably be expected or intended to result from the intentional acts of an "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real property or personal property, than initially expected or intended.

This exclusion applies regardless of whether any "insured" personally participated in or committed the alleged act and regardless of whether any "insured" subjectively intended the "bodily injury" or "property damage" for which a claim is made.

However, this exclusion **E.1.** does not apply to "bodily injury" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **Business**

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

COMPLAINT FOR DECLARATORY
JUDGMENT - 12

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

This exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   **b.** This exclusion **E.2.** does not apply to:

      (1) The rental of living space in the "residence premises" if such rental did not exceed 90 days in the 12 months prior to the "occurrence";

      (2) The rental of a private garage on the "residence premises"; or

      (3) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no "employees";

**3.  Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services by an "insured";

**4.  Insured's Premises Not An Insured Location**

"Bodily injury" or "property damage" arising out of a premises:

   **a.** Owned by an "insured";

   **b.** Rented to an "insured"; or

   **c.** Rented to others by an "insured";

that is not an "insured location";

*  *  *

**7.  Sexual Misconduct, Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual misconduct, sexual molestation, corporal punishment or physical or mental abuse. This exclusion applies regardless of whether any "insured" personally participated in or committed the alleged act and regardless of whether any "insured" subjectively intended the "bodily injury" or "property damage" for which a claim is made.

Sexual misconduct or sexual molestation means any activity, whether or not prosecuted, which is sexual in nature, whether permitted or unpermitted, including, but not limited to: sexual assault; sexual abuse; sexual battery; sexual relations; sexual acts; sexual activity; sexual handling; sexual massage; sexual exploitation; sexual exhibition; photographic, video, or other reproduction of sexual activity; fondling, intimacy, indecent exposure, or undue familiarity; or lewd or lascivious behavior;

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

* * *

**9. Criminal Acts**

"Bodily injury" or "property damage" arising from any criminal act. Criminal act means any act or omission which is criminal in nature or for which a penal statute or ordinance permits or requires any term of imprisonment or sentence of public service duties. This exclusion applies regardless of whether any "insured" is actually charged with or convicted of a crime and regardless of whether any "insured" subjectively intended the "bodily injury" or "property damage" for which a claim is made;

* * *

**F. Liability, Coverage A** does not apply to the following:

* * *

**8.** Punitive or exemplary damages. These include damages that may be imposed to punish a wrongdoer or deter others from similar conduct. If a suit is brought against an "insured" seeking covered compensatory damages and punitive or exemplary damages, "we" will afford a defense to such action but will not pay such punitive or exemplary damages.

4.4    The Conditions sections of the Home Policy provides in relevant part as follows:

**Conditions–SECTION 1**

**(Includes Limitations)**

**A. Limit Of Liability**

"Our" total liability under **Liability, Coverage A** for all damages resulting from any one "occurrence" will not be more than the **Liability, Coverage A** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", injured persons, claims made, persons liable, claimants, or policies involved. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

"Our" total liability under Medical Payments, Coverage B for all medical expense payable for "bodily injury" to one person as the result of one accident will not exceed the limit of liability for each person as stated in the Declarations. "Our" liability for each "occurrence" as stated in the Declarations is limited to all medical expenses for "bodily injury" to two or more persons.

**B. Joint Obligations**

COMPLAINT FOR DECLARATORY
JUDGMENT - 14

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

The terms of this policy impose joint obligations on persons defined as an "insured" person. This means that responsibilities, acts and failures to act of a person defined as an "insured" person will be binding upon another person defined as an "insured" person.

* * *

**General Policy Conditions**

**(Includes Limitations)**

**A. Policy Period**

Policy period means the policy term shown in the Declarations, commencing on the policy period beginning date shown in the Declarations. Under **SECTION 1**, this policy applies only to "bodily injury" or "property damage" that occurs during the policy period. . . .

4.5    The Businessowners Policy provides liability coverage as follows:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

In Section **II** – Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C.** Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph **H.** Property Definitions in Section **I** – Property and Paragraph **F.** Liability And Medical Expenses Definitions in Section **II** – Liability.

* * *

**SECTION II – LIABILITY**

**A.    Coverages**

**1. Business Liability**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

**b.** This insurance applies:

(1) To "bodily injury" and "property damage" only if:

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b) The "bodily injury" or "property damage" occurs during the policy period; and

(c) Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period. . . .

* * *

**f.   Coverage Extension – Supplementary Payments**

(1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

* * *

(e) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

COMPLAINT FOR DECLARATORY
JUDGMENT - 16

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

4.6    The Businessowners Policy the following exclusions, limitations, and conditions:

**B.    Exclusions**

**1.    Applicable To Business Liability Coverage**

This insurance does not apply to:

**a.    Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

**e.    Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

　　**(a)** Employment by the insured; or

　　**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

* * *

**j.    Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

COMPLAINT FOR DECLARATORY
JUDGMENT - 17

**(4)** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing services; and

**(9)** Services in the practice of pharmacy.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render of any professional service.

* * *

**p.   Personal And Advertising Injury**

"Personal and advertising injury":

**(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury" . . . .

* * *

**r.   Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

* * *

**C.   Who Is An Insured**

**1.**  If you are designated in the Declarations as:

a.   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

* * *

**2.**  Each of the following is also an insured:

COMPLAINT FOR DECLARATORY
JUDGMENT - 18

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

    **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

       **(1)** "Bodily injury" or "personal and advertising injury":

          **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

\* \* \*

**D.**     **Liability And Medical Expenses Limits Of Insurance**

**1.** The Limits of Insurance of Section **II** – Liability shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits".

**2.** The most we will pay for the sum of all damages because of all:

    **a.** "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

    **b.** "Personal and advertising injury" sustained by any one person or organization;

    is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

\* \* \*

**F.**  **Liability And Medical Expenses Definitions**

\* \* \*

    **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

4.7    The Businessowners Policy includes the endorsement "Punitive Damages Exclusion" (no. AIL 10 11 05 14), which provides in part as follows:

This insurance does not apply to sums awarded for punitive or exemplary damages. These include damages which may be imposed to punish a wrongdoer or deter others from similar conduct. Except that if a "suit" shall have been brought against any insured with respect to

COMPLAINT FOR DECLARATORY
JUDGMENT - 20

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

a claim for acts or alleged acts falling within the coverage hereof, seeking both compensatory and punitive or exemplary damages, then we will afford a defense to such action without liability, however, for such punitive or exemplary damages.

4.8    The Businessowners Policy includes the endorsement "Washington Changes" (no. BP 01 06 03 15), which provides in part as follows:

B. **Section II – Liability** is amended as follows:

**1.** Paragraph **B.1.e. Employer's Liability** Exclusion applies only to "bodily injury" to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "bodily injury" to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **B.1.e. Employer's Liability** is replaced by the following:

**e.  Employer's Liability**

**(1)** "Bodily injury" to an "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business.

**(2)** Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**2.** Paragraph **2.a.(1)** under **C. Who Is An Insured** applies only to "employees" of the insured whose employment is not subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

With respect to "employees" of the insured whose employment is subject to the Industrial Insurance Act of Washington, Paragraph **C.2.a.(1)** is replaced by the following:

**(1)** "Bodily injury" or "personal injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business; or

COMPLAINT FOR DECLARATORY
JUDGMENT - 21

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

**(b)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a).**

4.9     The Businessowners Policy includes the endorsement "Abuse or Molestation Exclusion" (no. BP 04 39 07 02), which provides in part as follows:

The following applies to Section **II** - Liability and supersedes any provision to the contrary:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**(a)** The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

**(b)** The negligent:

    **(i)**  Employment;

    **(ii)** Investigation;

    **(iii)** Supervision;

    **(iv)** Reporting to the proper authorities, or failure to so report; or

    **(v)** Retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **(a)** above.

4.10     The Businessowners Policy includes the endorsement "Washington Employment-Related Practices Exclusion" (no. BP 04 60 01 10), which  provides as follows:

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II – Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(i)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(ii)** Whether the insured may be liable  as an employer or in any other capacity; and

**(iii)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

However, Paragraphs **(1)(a)** and **(2)** of this exclusion do not apply if such "bodily injury" is sustained by any "employee" of the insured whose employment is subject to the Industrial Insurance Act of Washington (Washington Revised Code Title 51).

4.11    The Businessowners Policy includes endorsement "Washington Changes – Defense Costs" (no. BP 06 12 11 13) provides as follows:

The following applies to any provision in this Policy, or in any endorsement attached to this Policy, that sets forth a duty to defend:

If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

4.12    The exclusions, limitations, conditions, and other language in the Home Policy and the Businessowners Policy set forth in the preceding paragraphs preclude coverage under the Home Policy and the Businessowners Policy for the claims asserted by Oksana Kutsar against Barnick Chiropractic, PS, Jose Danie Orantes, and Roger Barnick in the Underlying Lawsuit.

## V.    CLAIM FOR DECLARATORY RELIEF UNDER 28 U.S.C. § 2201

5.1    CMIC realleges and incorporates the allegations of paragraphs 1.1–4.12 of its Complaint.

5.2    An actual controversy exists between CMIC and Defendants as to the rights, duties,

COMPLAINT FOR DECLARATORY
JUDGMENT - 23

and obligations of the parties under the Policy.

5.3    In accordance with 28 U.S.C. § 2201, CMIC seeks a declaration from this Court that CMIC has no duty to defend Barnick Chiropractic, PS, Jose Danie Orantes, or Roger Barnick in the Underlying Lawsuit.

5.4    In accordance with 28 U.S.C. § 2201, CMIC seeks a declaration from this Court that there is no coverage under the Policy for the claims asserted against Barnick Chiropractic, PS, Jose Danie Orantes, or Roger Barnick in the Underlying Lawsuit.

5.5    Plaintiff in the Underlying Lawsuit has been named as a Defendant herein because their rights may be affected by any declaration regarding insurance coverage available under the CMIC Policy.

## VI.    PRAYER FOR RELIEF

Having stated a claim for declaratory relief against the Defendants, CMIC requests that the Court enter judgment against Defendants as follows:

1.    That the Court enter a judgment declaring that CMIC has no duty to defend, indemnify, or provide any benefits or coverage under the Policy for any of the claims asserted against Barnick Chiropractic, PS, Jose Danie Orantes, and Roger Barnick in the Underlying Lawsuit.

2.    Declaring that CMIC is entitled to withdraw from the defense of Barnick Chiropractic, PS, Jose Danie Orantes, and Roger Barnick in the Underlying Lawsuit;

3.    Declaring that CMIC is entitled to reimbursement of defense fees and costs incurred to date in the defense of Barnick Chiropractic, PS, Jose Danie Orantes, and Roger Barnick in the Underlying Lawsuit; and

4.    Affording other and further relief as the Court deems just and equitable.

/ / /

COMPLAINT FOR DECLARATORY
JUDGMENT - 24

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP
600 University Street, Suite 2305
Seattle, WA 98101
T: 206.447.6461

DATED: January 14, 2026.

**SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP**

By:  _s/ Matthew Munson_
Matthew Munson WSBA #32019
600 University Street, Suite 2305
Seattle, WA 98101
Tel.:    206.447.6461
Email:   mmunson@selmanlaw.com

_Attorneys for Plaintiff COUNTRY Mutual Insurance Company_

COMPLAINT FOR DECLARATORY
JUDGMENT - 25

4932-6277-0051